IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARPENTERS COMBINED FUNDS, By | ) | |
| JAMES R. KLEIN, | ) | |
| Administrator, | ) | |
|         Plaintiff, | ) | 2:10-cv-63 |
|         v. | ) | |
| | ) | |
| RICHARD A. KLINGMAN, | ) | |
| | ) | |
|         Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

Pending before the Court is the MOTION FOR SUMMARY JUDGMENT (Doc. No. 25) filed by Plaintiff Carpenters Combined Funds by James R. Klein, Administrator (the "Funds"), with brief in support. Defendant Richard A. Klingman ("Klingman") has filed a brief in opposition to the motion (Doc. No. 29), and Plaintiff has filed a reply brief (Doc. No. 31). The parties have developed their respective positions regarding the Concise Statement of Material Facts ("CSMF") (Doc. Nos. 27, 28, 30, 32), and Plaintiff has submitted numerous exhibits. Accordingly, the motion is ripe for disposition.

**Procedural History**

On January 15, 2010, Plaintiff filed a two-count Complaint against Klingman. In Count I, Plaintiff alleges that Klingman, as the sole shareholder, officer, director and owner of R.K. Millwork Installation, LLC ("R.K. Millwork"), breached his fiduciary duty under the Employment Retirement Income Security Act ("ERISA") to submit payment of employee fringe benefit contributions to the Funds. In Count II, Plaintiff avers that Klingman's failure to submit to the Funds employee wage withholdings for union dues and political action contributions (which are not "employee benefits" governed by ERISA) constitutes the tort of conversion.

Klingman filed a Motion for More Definite Statement and a Motion to Dismiss, which the Court denied in a Memorandum Order dated March 15, 2010. On July 30, 2010, Klingman filed a Motion for Judgment on the Pleadings, in which he again asked the Court to dismiss the ERISA claim. In a Memorandum Order dated August 25, 2010, the Court denied Klingman's motion and explained that Plaintiff had adequately pled that the unpaid funds constitute "plan assets" over which Klingman is a "fiduciary." After a period of discovery, Plaintiff has moved for summary judgment on both counts of the Complaint.

**Factual Background**

R.K. Millwork is a signatory to a collective bargaining agreement ("Labor Agreement") with a local union affiliated with the Greater Pennsylvania Regional District Council of Carpenters (the "Carpenters Union"), a copy of which has been submitted to the Court. Klingman is the sole officer and owner of R.K. Millwork and signed the Labor Agreement on its behalf on July 4, 2007.

Under the terms of the Labor Agreement, R.K. Millwork was required to pay fringe benefit contributions to the Funds. Article VII § 4. These fringe benefit contributions were deducted from the employees' wages and were to be submitted to the Funds by the last day of each month, which were to have covered the amounts due for work done in the preceding month. Article XIII § 5 of the Labor Agreement specifies that contributions to the Funds "shall be considered delinquent if not received by the Fund Office by the last day of the month when such monthly contributions are due." In the event of a delinquency, the Employer becomes obligated to pay the principal, interest, an administrative fee/liquidated damages, and attorney fees. *Id*. The Labor Agreement provides that Klingman will have personal liability for unpaid

contributions. Specifically, Article XIII § 4(b) of the Labor Agreement states:

> **The Employer [R.K. Millwork] shall be personally liable to the Carpenters' Combined Funds, Inc. for all then existing or future unpaid amounts due and payable to the Funds. In the event the Employer is a corporation, liability under this section shall be imposed not only on the corporation, but also personally on each corporate official of that Employer who is empowered to sign checks and/or execute any agreement.**

It is undisputed that R.K. Millwork failed to submit employee fringe benefit contributions and wage withholdings to the Funds, as required. It is also undisputed that Klingman was responsible for the collection of all monies payable to R.K. Millwork resulting from its employees' work covered by the Labor Agreement and that he was responsible for the preparation, approval and submittal of monthly reports and payments to Plaintiff. Klingman had check writing authority and decided which bills of R.K. Millwork would be paid and which would not be paid. Klingman had discretionary control over money of R.K. Millwork and had the authority and responsibility to remit wage withholdings to the Funds. Between 2007 and present, Klingman received compensation from R.K. Millwork.

On August 14, 2009, at Civil Action No. 08-1611, a Judgment on Arbitration Award was entered in favor of the Funds and against R.K. Millwork in the amount of $124,608.56 for the unpaid employee fringe benefit contributions and wage withholdings. No testimony was presented at the arbitration proceeding, as R.K. Millwork decided to accept the Funds' representations regarding the amounts due. Pursuant to Plaintiff's Reply CSMF, the Funds assert that the "Grand Total" owed by R.K. Millwork to the Funds as of November 10, 2010 was $172,397.79. This total amount reflected the principal amounts of the unpaid fringe benefits ($92,404.78) and wage withholdings ($7,974.40) as determined by the arbitrator, and additional amounts for interest (at 15% per year) accrued as of November 10, 2010, contractual/liquidated damages (10%), and attorney fees (20%). The Judgment remains unsatisfied. Plaintiff seeks to

recover the entire balance from Klingman personally, with the exception that it is not seeking contractual/liquidated damages of $1,342.98 in its conversion claim. *See* Plaintiff's Reply CSMF at 6 n. 1. Thus, as of November 10, 2010, Plaintiff's claim was $171,054.81.

Article VIII § 5(C) of the Labor Agreement incorporated the terms and provisions of the Agreements and Declarations of Trust which created the Funds (the "Trust Agreements"). However, there is substantial confusion regarding which Trust Agreements were actually incorporated into the Labor Agreement. Plaintiff attached various Trust Agreements which it contended had been incorporated into the Labor Agreement. In the earlier stages of this case, the Court was required to view the record in the light most favorable to Plaintiff. Defendant has strenuously denied the authenticity of the attached documents. Upon further investigation, Plaintiff has now conceded that it made a mistake. With regard to contributions owed for pension and medical benefits, Plaintiff agrees that the applicable Trust Agreements in effect at the time of R.K. Millwork's delinquencies did not contain "due and owing" language such that the unpaid contributions became "plan assets" immediately. Nevertheless, Plaintiff contends that this mistake is moot because the language of the Labor Agreement itself is sufficient to make the delinquent contributions "plan assets." In the alternative, Plaintiff contends that annuity and savings contributions of roughly $34,000 remain recoverable because the relevant Trust Agreement was incorporated and does provide that unpaid annuity and savings contributions become "plan assets" immediately.[1]

---

[1] Plaintiff's Reply Brief at 3 states that "the Funds are withdrawing its breach of fiduciary duty claim with respect to the pension and medical benefits claimed." Despite this unfortunate and confusing choice of words, the Court interprets Plaintiff to be limiting its claim if, and only if, the Court does not accept Plaintiff's primary argument based on the language of the Labor Agreement. *See* Reply Brief at 2 ("to the extent the Court agrees [that the Labor Agreement establishes Klingman's liability for the full amount of the Funds' claim], all of the remaining arguments [i.e., as to the Trust Agreements] become moot.")

4

**Standard of Review**

Federal Rule of Civil Procedure 56 governs summary judgment. In interpreting Rule 56, the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Celotex*, 477 U.S. at 323. The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there

is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

In response to many of Plaintiff's Concise Statements of Material Fact, Defendant has stated that he lacks sufficient information to admit or deny the allegation and demands "strict proof" at trial. Under long-established precedent, such a response does not create a material dispute of fact. In *Houghton v. American Guar. Life Ins. Co.*, 692 F.2d 289, 295 (3d Cir. 1982), the United States Court of Appeals for the Third Circuit explained:

> A mere demand for proof does not create a material issue of fact requiring the denial of a motion for summary judgment. *See, e.g., Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir. 1975) ("Given the opportunity to respond to a movant's affidavits, an adverse party may not rest upon a mere cryptic and conclusionary allegation in his pleading, but must set forth specific facts showing that there is a genuinely disputed factual issue for trial"); *Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.*, 365 F.2d 742, 747 (3d Cir. 1966) (must present facts which indicates that material issues of fact exist); *Robin Construction Co. v. United States*, 345 F.2d 610, 613 (3d Cir. 1965) (cannot defeat a summary judgment motion by "mere formal denials or general allegations which do not show the facts in detail and with precision").

Similarly, Local Rule 56(E) explains that facts set forth in a Concise Statement of Material Facts will "be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *Accord* Fed. R. Civ. P. 56(e)(2) (2009) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely

merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.") Pursuant to the recent amendment to Rule 56 that became effective several days prior to the filing of Defendant's response, Rule 56(e) now provides that if a party fails to properly address the opposing party's assertion of fact, the court may consider that fact to be undisputed.

**Legal Analysis**

It is undisputed that R.K. Millwork failed to make payments to the Funds, as required, for fringe benefit contributions and wage withholdings associated with work performed by union carpenters. The question in this case is whether Klingman, the sole owner, director and officer of R.K. Millwork, may be held personally liable for the unpaid amounts. Plaintiff maintains that by failing to submit the fringe benefit contributions, Klingman breached his fiduciary duties to the Funds under ERISA. Defendant contends that the ERISA claim is legally deficient because the Labor Agreement fails to define when the unpaid contributions became vested "plan assets." Plaintiff further maintains that by failing to submit wage withholdings for items not covered by ERISA (namely, union dues and political action contributions), Klingman is liable for the tort of conversion. The Court will address these contentions seriatim.

1. ERISA Fiduciary Liability

To prevail on a theory of fiduciary liability under 29 U.S.C. § 1009(a), a plaintiff must prove: (1) that the unpaid contributions to the ERISA Funds constituted "plan assets" within the meaning of 29 U.S.C. § 1002(21)(A); and (2) that the individual defendant was a "fiduciary" as defined in 29 U.S.C. § 1002(21)(A) with respect to those assets. *Roofers Local 30 Combined*

*Welfare Fund v. Lentz McGrane, Inc.*, 2005 WL 425582 (E.D. Pa. February 21, 2005).

It is undisputed that Klingman exercised sufficient authority and control to fit within the definition of a "fiduciary." ERISA, 29 U.S.C. § 1002(21)(A), defines the term "fiduciary":

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(b) of this title.

Klingman has admitted his authority to act on behalf of R.K. Millwork and his control over the unpaid contributions. In addition, Klingman's personal liability for the unpaid contributions is clearly established by Article XIII § 4(b) of the Labor Agreement. Thus, Klingman is without doubt a "fiduciary."

However, Klingman contends that the ERISA breach of fiduciary duty claim fails as a matter of law because the unpaid contributions are not "plan assets." Defendant concedes that the Labor Agreement specifies when employer contributions become "due" and "delinquent," but he argues that it fails to state when the unpaid amounts become vested "plan assets." At first glance, this contention appears to be a somewhat desperate attempt to shirk his liability. Upon closer scrutiny, however, the term "plan assets" is not defined by ERISA and there is considerable disagreement about when unpaid employer contributions become plan assets. *See United States v. Annucci*, 2007 WL 1310156 *8 (S.D.N.Y. May 03, 2007) (collecting cases).

There is no Third Circuit precedent directly on point, but Klingman relies on two district court opinions. In *Galgay v. Gangloff*, 677 F. Supp. 295, 301 (E.D. Pa. 1987), *aff'd without opinion*, 932 F.2d 959 (3d Cir. 1991), the Court permitted a multi-employer plan to pursue an

ERISA breach of fiduciary duty claim but cautioned that it: "by no means holds as a general rule that employers may be liable under ERISA as fiduciaries merely because of delinquent contributions to a multi-employer plan." In *Teamsters Health and Welfare Fund of Philadelphia and Vicinity v. World Transp., Inc.*, 241 F.Supp.2d 499, 506 (E.D. Pa. 2003), the relevant Trust Fund Agreement had been amended to clearly provide that unpaid contributions were fund assets.[2] Prior to this amendment, there was no clear and undisputed evidence as to whether unpaid contributions were plan assets and the Court found that they did not become plan assets "until the delinquent amounts were determined by an audit or contribution report." *Id.* Thus, Klingman's argument is not frivolous.

Nevertheless, the Court concludes that Plaintiff is entitled to summary judgment on its ERISA breach of fiduciary duty claim. The majority of cases involving similar situations have determined that employee fringe benefit contributions withheld from employee paychecks become ERISA "plan assets" immediately, regardless of whether or not money is ever sent by the employer to the plan. In other words, such contributions "vest" immediately and no special contractual language is necessary. *See, e.g., Board of Trustees of Airconditioning and Refrigeration Industry Health and Welfare Trust Fund v. J.R.D. Mechanical Services, Inc.*, 99 F.Supp.2d 1115, 1120 (C.D. Cal. 1999); *United States v. Grizzle*, 933 F.2d 943, 947 (11th Cir. 1991); *Professional Helicopter Pilots Ass'n v. Denison*, 804 F.Supp. 1447, 1453 (M.D. Ala. 1992); *Pension Benefit Guaranty Corp. v. Solmsen*, 671 F.Supp. 938, 945-46 (E.D.N.Y. 1987); *Lentz McGrane*, 2005 WL at 425582 *4 (finding that unpaid contributions were "plan assets"

---

[2] Defendant argues that a contract term which provides that unpaid contributions are "held in trust" is insufficient to define these contributions as vested plan assets. This is a mis-reading of the case. The "held in trust" language quoted by Defendant is contained in the July 2000 amendment to the Trust Agreement, which the parties stipulated **did** define unpaid contributions as plan assets. *Id.* at 505-06.

despite lack of explicit "vesting" language in contract).   In *In re Luna*, 406 F.3d 1192, 1206 n. 13 (10th Cir. 2005), the Court held that there was no fiduciary liability under ERISA for failure to pay <u>employer</u> contributions, but distinguished that situation from an employer's failure to remit <u>employee</u> contributions withheld from pay checks – for which the employer will be liable under ERISA.

*Galgay* and *World Transportation* represent a minority approach, are non-binding, and are distinguishable.  Moreover, even applying the principles outlined in *Galgay*, Plaintiff is entitled to summary judgment on this record.  In *Galgay,* the Court observed that ERISA adopted a broad, functional definition of fiduciary responsibility and, as a remedial statute, was to be liberally construed to protect participants and employee benefit plans.  677 F. Supp. at 302.  An ERISA fiduciary must discharge his duties solely in the interest of, and for the exclusive purpose of, providing benefits to the participants and beneficiaries.  29 U.S.C. § 1104(a)(1)(A)(1).  An ERISA regulation, 29 C.F.R. § 2510.3-102, defines "plan assets" as "amounts that a participant has withheld from his wages by an employer," which would include sums the employer has not yet submitted to a fund.³  An ERISA fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from such breach."  29 U.S.C. § 1109.  Indeed, *Galgay* rejected the defendant's argument that the failure to define the term "plan assets" was dispositive and permitted a breach of fiduciary duty claim to proceed.  Instead, the Court explained that the requisite intent to create "plan assets" was found in the language of the parties' contract.

In this case, the amounts at issue were <u>employee</u> contributions, and R.K. Millwork made deductions from its employees' wages.  Article VII § 4 of the Labor Agreement required R.K.

---

³ The regulation creates a seven-day "safe harbor" period for plans with less than 100 participants.  The regulation appears to be a strong argument in favor of Plaintiff's position, but neither party has addressed it.

Millwork to make contributions to the Funds. Article XIII § 4(b) of the Labor Agreement clearly established that Klingman would be personally liable for any unpaid contributions. Article XIII § 5 of the Labor Agreement specifies that contributions to the Funds "shall be considered delinquent if not received by the Fund Office by the last day of the month when such monthly contributions are due." It is undisputed that R.K. Millwork's unpaid contributions have been delinquent for a long period of time; that the amounts due were determined after an arbitration proceeding; that R.K. Millwork did not dispute the Funds' claims; and that a Judgment was entered in favor of the Funds against R.K. Millwork.

In *World Transportation*, there had been a considerable delay in determining the amounts due to the fund as a result of a miscalculation. In addition, the record reflected a twenty-year practice by which the Funds would send corrected invoices as to underpayments and/or overpayments, and that employers waited for these corrected invoices before remitting the payments. *Id.* In this case, there is no analogous miscalculation or re-invoicing dispute. Indeed, Klingman has not raised any factual dispute as to the unpaid contributions. Moreover, Klingman does not propose an alternative contractual interpretation – instead, he argues as a matter of law that the delinquent payments would <u>never</u> become vested ERISA plan assets.

The Court is inclined to agree that the majority rule (i.e., immediate vesting of unpaid contributions withheld from employee paychecks) is more consistent with the intent of ERISA, at least when the amounts are not disputed. However, it need not reach a final decision on that issue, as the unpaid contributions in this case have become "plan assets" under any reasoned analysis. Klingman withheld the sums at issue from employee paychecks and then failed to remit those amounts to the Funds, as required. Moreover, the Funds actually obtained a Judgment against R.K. Millwork for the unpaid contributions. In summary, the Court concludes

that based on the record evidence, the delinquent contributions constitute "plan assets" such that Klingman is personally liable for breach of fiduciary duty under ERISA.[4]

2. Tort of "Conversion" Claim

The Pennsylvania Supreme Court defines conversion as "an act of willful interference with a chattel, done without lawful justification, by which any person entitled thereto is deprived of use and possession." *Norriton East Realty Corp. v. Central-Penn National Bank*, 254 A.2d 637, 638 (1969). *See also Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (1964) (conversion is "an act of interference with the dominion or control over a chattel"); Restatement (Second) of Torts § 222A(1) ("Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.") Under Pennsylvania law, a corporate officer who takes part in the commission of a tort by the corporation may be held personally liable for that tort. *See Voest-Alpine Trading USA Corp. v. Vantage Steel Corp.,* 919 F.2d 206, 217 (3d Cir.1990).

Plaintiff has pursued a conversion claim as to certain wage withholdings for union dues and political action contributions that are not "employee benefits" subject to ERISA. Defendant has not disputed the conversion claim in any way. In *Laborers Combined Funds of Western Pennsylvania v. Cioppa*, 346 F.Supp.2d 765 (W.D. Pa. 2004) and *Laborers Combined Funds of Western Pennsylvania v. Parkins*, 2002 WL 31435287 (W.D. Pa. 2002), this Court granted summary judgment in favor of multi-employer funds against corporate officers under very

---

[4] As noted above, the Court is aware of Plaintiff's mistake regarding which Trust Agreements had been incorporated into the Labor Agreement. The Court need not resolve that confusion because the undisputed facts and circumstances of this case are sufficient to hold Klingman liable for breach of fiduciary duty under ERISA for the delinquent contributions.

12

similar circumstances. Accordingly, without opposition the Court has no difficulty in granting summary judgment in favor of Plaintiff and against Klingman on this conversion claim. It is undisputed that wages were withheld by R.K. Millwork from employee paychecks, and that Klingman personally participated, in his role as the sole owner, director and officer of R.K. Millwork, in the failure to remit those monies to the Funds. Accordingly, Plaintiff is entitled to summary judgment on its conversion claim.

3. Damages

The only remaining issue is damages. Under ERISA, 29 U.S.C. § 1132(g)(2), the award of interest, liquidated damages and reasonable attorneys' fees is mandatory. *See Anker Energy Corp. v. Consolidation Coal Co.*, 177 F.3d 161, 179 & n.9 (3d Cir. 1999). Plaintiff obtained a Judgment on August 14, 2009, which calculated the sums owed by R.K. Millwork as of that date. Plaintiff has submitted an updated calculation which reflects interest accrued through October 31, 2010. However, additional information is necessary. A cursory review of the amounts claimed reflects several apparent discrepancies, including: (1) the claimed liquidated damages ($9,895.97) are clearly not 10% of the principal ($92,404.78); and (2) the claimed attorneys' fees of 20% ($26,651.42) are clearly not twice the amount of the claimed liquidated damages, and do not equal 20% of the principal. Moreover, Plaintiff has not submitted documentation to demonstrate that its claim for attorneys' fees is reasonable. *See Parkins*, 2002 WL 31435287.

Under the conversion theory, damages are intended to compensate a plaintiff for actual loss. *Scully v. US WATS, Inc.,* 238 F.3d 497, 509 (3d Cir. 2001) (citing *Schultz v. Commodity Futures Trading Com'n*, 716 F.2d 136, 139 (2d Cir. 1983). Plaintiff has not explained its authority to recover 15% interest on this claim. In addition, it would be helpful for Plaintiff to

clarify whether or not it is seeking liquidated damages and/or attorneys fees on this claim.

In summary, the Court is hesitant to award a specific monetary judgment based on this record. Accordingly, the Court will provide the Funds with a limited time to supplement the record so that a proper calculation of monetary damages may be made. In accordance with the foregoing, the Court will **GRANT** Plaintiff's motion for summary judgment as to liability but will defer ruling on the amounts owed by Klingman to the Funds at this time.

An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARPENTERS COMBINED FUNDS, By JAMES R. KLEIN Administrator | ) ) ) | |
| Plaintiff, | ) | 2:10-cv-63 |
| v. | ) ) | |
| RICHARD A. KLINGMAN, | ) ) | |
| Defendant. | ) | |

### ORDER OF COURT

AND NOW this 11th day of January, 2011, in accordance with the foregoing Memorandum Opinion, it is ORDERED, ADJUDGED and DECREED that Plaintiff's MOTION FOR SUMMARY JUDGMENT (Doc. No. 25), is hereby **GRANTED** as to liability.

On or before January 25, 2011, Plaintiff shall file a brief not to exceed 10 pages, with supporting documentation to substantiate its damages under the ERISA and conversion claims. Said submission shall be detailed and precisely itemize the sums which Plaintiff seeks to recover. On or before February 8, 2011, Defendant shall file a response, not to exceed 10 pages.

BY THE COURT:

/s/ Terrence F. McVerry
United States District Court Judge

cc: Jeffrey J. Leech, Esquire
Email: jleach@tuckerlaw.com
Neil J. Gregorio, Esquire
Email: ngregorio@tuckerlaw.com

Timothy G. Wojton, Esquire
Email: wojtonlaw@comcast.net